**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shai Segui, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>Donna Moniz, et al.,<br><br>                    Defendants. | No. CV-25-01849-PHX-SHD<br><br>**ORDER** |

Defendant Gregg Woodnick (Doc. 18) and Defendant Stephanie Stromfors (Doc. 20) moved to dismiss under Fed. R. Civ. P. 12(b)(6).  For the following reasons, Woodnick's motion, (Doc. 18), will be **granted** with leave to amend; and Stromfors's motion, (Doc. 20), will be **granted in part** and **denied in part**.

**I.    FACTUAL BACKGROUND[1]**

This case arises from Arizona family court proceedings[2] between Plaintiff David Segui ("David")[3] and Donna Moniz ("Moniz").  (*See generally* Doc. 1.)  Plaintiffs are David and his son, Shai Segui ("Shai"), who was a minor at all times relevant to this action

---

[1]    As reflected in the factual recitation set forth below, all well-pled factual allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

[2]    *See Segui v. Moniz*, FC2015-004537 (Maricopa Cnty. Super. Ct. May 8, 2015); *Family Court Case Information – Case History*, Jud. Branch of Ariz. in Maricopa Cnty., https://www.superiorcourt.maricopa.gov/docket/FamilyCourtCases/caseInfo.asp?caseNumber=fc2015-004537 (last visited March 18, 2026).

[3]    The Court refers to Plaintiffs David Segui and Shai Segui by their first names throughout this Order for clarity because they share a surname, and not out of disrespect.

(collectively, "Plaintiffs"). (*Id.* at ¶¶ 23–24.) David and Moniz also have a second child, Shai's younger brother. (*Id.* at ¶ 2.) David filed for divorce in 2015, initiating custody proceedings in the Maricopa County Superior Court. (*Id.* at ¶¶ 3, 39.) A Decree of Dissolution was entered by the Maricopa County Superior Court in 2017, (*id.* at ¶ 40) and, over the next several years, a lengthy custody battle ensued, (*see id.* at ¶ 39.)

Defendant Stromfors was the Best Interest Attorney ("BIA") for Shai and his brother in the family court proceedings. (*Id.* at ¶ 46.) Defendant Woodnick served as Moniz's attorney in family court. At its core, the Complaint alleges that Defendants Woodnick and Stormfors conspired with Moniz to separate Shai from David and place him with Moniz, despite Shai's consistent reports that Moniz sexually, physically, and emotionally abused him.[4]

Plaintiffs allege that throughout the family court proceedings, Shai consistently reported to therapists and court-appointed practitioners that Moniz had physically, sexually, and mentally abused him, and consistently expressed his desire to live exclusively with his father. (*Id.* at ¶¶ 41–43.) Plaintiffs allege that none of the practitioners reported the abuse to authorities, and that they instead withheld and misrepresented Shai's allegations to the family court for their own financial benefit. (*Id.* at ¶¶ 44–45.)

On December 1, 2020, Diana Vigil, the court-appointed "Therapeutic Interventionist," advised the court that Shai required intensive reunification therapy to reunify him with his mother and recommended a specific program: Building Family Bridges, owned and operated by Randy Rand out of a hotel in Ventura County, California. (*Id.* at ¶¶ 8, 29, 54.) Vigil was one of the therapists to whom Shai reported Moniz's abuse. (*Id.* at ¶ 42.) Two weeks later, on December 14, 2020—before any court order mandated participation in the program—Moniz paid Building Family Bridges a $500 deposit. (*Id.* at ¶¶ 55–57.) The Complaint alleges that Moniz made this payment "following conversations

---

[4] The Complaint originally named Moniz along with several others involved in the family court proceedings as defendants. Defendants Moniz, Diana Vigil, Randy Rand, and Building Family Bridges were terminated because Plaintiffs did not timely serve them under Federal Rule of Civil Procedure 4(m). (Doc. 24.) Their involvement is described solely as background context for the claims that remain against Defendants Woodnick and Stromfors.

between Moniz, Woodnick, Vigil, Stromfors, and Rand," but does not allege any facts about the content or circumstances of those conversations.  (*See id.* at ¶ 56.)  Plaintiffs further allege that "Defendants used email, phone calls, text messages, and similar means to communicate to each other" about the alleged scheme.  (*Id.* at ¶ 140.)

On December 28, 2020, Stromfors filed an Emergency Motion seeking to transfer the children to Moniz's exclusive physical and legal custody on a temporary basis and to suspend all contact between the boys and David, including suspending David's legal and physical custody.  (*Id.* at ¶ 59.)  The family court granted the motion (the "Emergency Order") and ordered the boys to attend Building Family Bridges.  (*Id.* at ¶ 76.)  Pursuant to the Emergency Order, David's legal and physical custody was suspended for no less than 90 days following the completion of Building Family Bridges and its "aftercare program."  (*Id.* at ¶ 79.)  Shai was prohibited from communicating with David during that period.  (*Id.* at ¶ 98.)  The Emergency Order also directed David to produce the boys at the courthouse on January 6, 2021, without informing them about the plan, so that they could be taken to Building Family Bridges.  (*Id.* at ¶ 77.)[5]

That same day, January 6, Shai was receiving inpatient treatment at Phoenix Children's Hospital for suicidal ideation that "arose after he became aware that he would soon be forced to endure 'reunification therapy' with his abusive mother."  (*Id.* at ¶ 82.)  Prior to Shai's release, David "was ordered by the family court to leave Shai at the hospital, unattended, so that the seizure and transport to [Building Family Bridges] could occur, regardless of Shai's hospital stay and his obvious need for ongoing treatment."  (*Id.* at ¶ 83.)  Plaintiffs allege that Shai was prematurely discharged, briefly held at a separate mental health facility called Oasis, and then confronted by an unknown "Transport Team"—individuals he had never met.  (*Id.* at ¶¶ 84–86.)  When Shai hesitated to follow them to their unmarked van, the Transport Team told him his brother was already inside and that if he refused to go, he would not see his brother.  (*Id.* at ¶ 87.)  Shai complied, and

---

[5]    Plaintiffs allege that a hearing on the Emergency Motion was not held until approximately nine days after "Shai and his brother ha[d] already been seized, transported across state lines, and imprisoned at [Building Family Bridges]."  (*Id.* at ¶ 81.)

the Transport Team searched him for weapons, a cellphone, and other electronic devices without his consent or the consent of his father, before transporting him and his brother across state lines to Building Family Bridges. (*Id.* at ¶¶ 88–90.) Throughout the journey, and upon arrival at Building Family Bridges, Shai was kept under constant surveillance by the Transport Team, including while using the restroom, and was given no privacy from the moment he left the hospital. (*Id.* at ¶¶ 91–96.)

From his first day at Building Family Bridges, Shai repeatedly requested to be sent home to live with his father and expressed his discomfort with Moniz, but his concerns were ignored. (*Id.* at ¶ 101.) At Building Family Bridges, Shai was held without a phone or any means to contact the outside world, including David. (*Id.* at ¶ 97.) During counseling sessions, Shai continued to raise Moniz's history of abuse, but he was ordered to "stop discussing past events." (*Id.* at ¶ 102.) Plaintiffs allege that Rand and Vigil threatened Shai to ensure he gave positive reports about Building Family Bridges to the family court. (*Id.* at ¶ 104.) They told Shai that if he did not cooperate, he would be sent to a wilderness therapy program and separated from his brother. (*Id.*) Shai ultimately "decided to simply sit down and remain quiet." (*Id.* at ¶ 108.)

When Building Family Bridges concluded, Shai was placed in Moniz's full custody pursuant to an aftercare program, and David's parental rights—both physical and legal custody—were terminated without any judicial finding that he was an unfit parent. (*Id.* at ¶¶ 109, 115.) The aftercare program required Shai's relationship with Moniz to improve before he could have any contact with David, a condition Plaintiffs allege was impossible to satisfy given Moniz's continued abuse. (*Id.* at ¶ 116.) As a result, Shai and David were precluded from any contact with one another for approximately 420 days. (*Id.* at ¶¶ 114, 124.)

Plaintiffs assert that today, Shai continues to suffer "from the emotional trauma resulting from his imprisonment at [Building Family Bridges] and his mother's abuse," and that the loss of time with his father "has resulted in severe anxiety, suicidal thoughts, extreme depression, anger, and fear of the judicial process." (*Id.* at ¶¶ 127, 129.)

According to the Complaint, the events in this case were not isolated, but reflect a broader pattern of conduct carried out by the same group of individuals across multiple cases. (*Id.* at ¶ 51.) Plaintiffs allege that Defendant Stromfors has been appointed as BIA in numerous other cases where the same approach—unsubstantiated allegations of severe parental alienation followed by a court order sending children to Building Family Bridges—was used to separate children from non-abusive parents for financial gain. (*Id.*) One such case known to Plaintiffs involves the Nielsen family, in which Plaintiffs allege Stromfors, Vigil, and Rand employed identical methods and achieved the same result. (*Id.* at ¶¶ 11–14, 52–53.) Plaintiffs do not allege that Woodnick had any role in the Nielson case. (*See generally id.*)

**II.     PROCEDURAL HISTORY**

This is not the first federal action arising out of these family court proceedings. On May 20, 2024, Shai—but not David—filed a related action in this District, (the "Related Case"), against several defendants, including Stromfors, asserting 42 U.S.C. § 1983 claims arising out of the same family court proceedings. *See Segui v. Stromfors,* 2025 WL 1785254, at *1 (D. Ariz. 2025). The Related Case was dismissed as to Stromfors on qualified immunity grounds. *Id.* at *3–4. Shai has appealed that dismissal to the Ninth Circuit, where the matter remains pending. *Segui v. Stromfors*, No. 25-4508 (9th Cir. July 21, 2025). Shai did not bring any claims against Woodnick in the Related Case. *See Segui*, 2025 WL 1785254 at *1.

Plaintiffs filed this action on May 29, 2025. (Doc. 1.) David brings claims against Woodnick and Stromfors under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), and its state law analog, A.R.S. § 13-2314.04 ("Arizona RICO") (Counts 1 and 2). (*Id.* at ¶¶ 131–159.) Shai brings claims against Woodnick and Stromfors under 42 U.S.C. § 1983 for unreasonable search and seizure under the Fourth Amendment and substantive due process violation under the Fourteenth Amendment (Counts 6 and 7). (*Id.* at ¶¶ 190–222.)

Several defendants named in the Complaint in this action—Moniz, Rand, Vigil, and

Building Family Bridges—were terminated for failure to effectuate timely service under Federal Rule of Civil Procedure 4(m). (Doc. 24.) Woodnick and Stromfors are the only remaining defendants. Plaintiffs allege that Woodnick, as Moniz's privately retained attorney throughout the underlying family court proceedings, knowingly assisted Moniz, Vigil, Stromfors, and Rand in injuring Plaintiffs, participated in the pre-Emergency Order conversations that preceded the Building Family Bridges deposit, knew David had the financial means to sustain prolonged litigation, and conspired to ensure the boys would be enrolled in Building Family Bridges at David's expense. (Doc. 1 at ¶¶ 31, 56, 71, 75.) As for Stromfors, Plaintiffs allege that she served as the BIA for the children beginning November 12, 2020, that she never spoke with either child before or after filing the Emergency Motion, filed that motion without rational justification and solely for financial gain, and knew David had the financial means to sustain prolonged litigation. (*Id.* at ¶¶ 46, 59, 61, 71, 78.)

Woodnick moved to dismiss all claims against him on August 14, 2025. (Doc. 18.) Plaintiffs responded, (Doc. 25), and Woodnick replied (Doc. 27). Stromfors moved to dismiss all claims against her on August 29, 2025. (Doc. 20.) Plaintiffs responded, (Doc. 26), and Stromfors replied (Doc. 28). Stromfors has requested oral argument on her motion to dismiss. (Doc. 20 at 1.) Because oral argument would not assist in resolving the issues presented, Stromfors's request is denied. *See* LRCiv 7.2(f).

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions cannot be accepted as true, nor can "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in

original) (quotation marks omitted)).  That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  A "well-pleaded complaint may proceed even if" actual proof of those facts "is improbable[ ] and . . . a recovery is very remote and unlikely."  *Id.* at 556 (quotation marks omitted).

A court's review on a motion to dismiss is usually limited to the complaint itself, but the court may consider documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).[6]

## IV.    DISCUSSION

Woodnick and Stromfors each move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  Woodnick argues that Plaintiffs have failed to plead sufficient facts to support a cognizable RICO or § 1983 claim against him, contending that his role as opposing counsel in the underlying family court proceedings cannot form the basis of a RICO enterprise or render him a state actor for purposes of § 1983.  (*See generally* Doc. 18.)  Stromfors raises several threshold arguments, including that Shai's § 1983 claims are barred by res judicata and qualified immunity because of the Related Case, and that David's RICO claims are time-barred under the applicable statute of limitations.  (Doc. 20 at 7–14.)  She further argues that, even if those threshold defenses do not apply, Plaintiffs have failed to state a cognizable RICO or § 1983 claim against her. (*Id.* at 14–18.)  Each motion is addressed in turn, beginning with Woodnick's.

### A.    Defendant Woodnick's Motion to Dismiss

All of Plaintiffs' claims against Woodnick suffer from the same defect: they fail to

---

[6]    The Court may take judicial notice of public records such as the family court documents attached to the complaint and the parties' briefs, as well as filings in other federal court proceedings.  *See Lee*, 250 F.3d at 689–90 (citing Fed. R. Evid. 201); *Suzuki v. Cnty. of Contra Costa*, 2019 WL 2247829, at *2 & n.5 (N.D. Cal. 2019) (taking judicial notice of "various state court orders and documents from plaintiff's family court proceedings"); *Robert Kubicek Architects & Assocs. Inc. v. Bosley*, 2012 WL 3149348, at *1 (D. Ariz. 2012) (explaining that courts can take "judicial notice of undisputed matters of public record, including documents on file in federal or state courts," without converting a motion to dismiss to one for summary judgment) (quoting *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)).

allege sufficient facts specific to Woodnick—as distinguished from the collective allegations directed at all defendants—to state a cognizable claim against him. "[I]t is insufficient for Plaintiff[s] to simply make vague and conclusory allegations against a group, without any factual specificity as to what any particular individual did or failed to do." *Brown v. Maricopa Cnty.*, 2025 WL 2403137, at \*4 (D. Ariz. 2025) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of complaint that referred to all defendants "generally and categorically" because the plaintiff failed to "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quotation marks omitted))).

### 1.    Federal RICO Claims

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). "Racketeering activity" is any act indictable under one of several provisions of Title 18 of the United States Code or certain state law violations that are "punishable by imprisonment for more than one year." 18 U.S.C. § 1961. A RICO claim requires a showing that a "pattern of racketeering activity" occurred—meaning the predicate acts must be both related and "amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

#### a.    Conduct

To satisfy § 1962(c)'s conduct element, a defendant must have "participate[d] in the operation or management of the enterprise itself," and that the defendant played "*some* part in directing the enterprise's affairs"—it is not enough to have performed services for the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 176, 179 (1993). Considerations relevant to this inquiry include whether a defendant (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was

indispensable to the achievement of the enterprise's goal. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).

The Complaint's Woodnick-specific factual allegations are sparse. Woodnick served as Moniz's privately retained attorney throughout the underlying family court proceedings. (Doc. 1 at ¶ 31.) Plaintiffs allege that Woodnick participated in "conversations" among Moniz, Vigil, Stromfors, and Rand before Moniz paid the $500 deposit to Building Family Bridges, knew David had the financial means to sustain prolonged litigation, and "financially benefit[ted]" from the family court's custody orders. (*Id.* at ¶¶ 5, 56, 71, 75, 125.) The remainder of the allegations directed at Woodnick are leveled collectively at all "Defendants" without identifying what Woodnick personally did. (*See, e.g.*, *id.* at ¶¶ 14, 49, 135, 140–142, 149–156.)

Plaintiffs' allegations do not suffice. First, it is insufficient for Plaintiffs to "make vague and conclusory allegations" against the group of defendants without any factual specificity as to Woodnick's personal actions. *See Brown*, 2025 WL 2403137, at *4. For example, the Complaint does not identify anything about the alleged "conversations" that occurred before Moniz deposited the $500 that indicates Woodnick's role. It does not say when the alleged conversations occurred, who said what, what agreement if any was reached, or what specific act Woodnick took in furtherance of any scheme. The inference Plaintiffs make—that Woodnick must have directed the deposit as part of a pre-arranged scheme—is not a reasonable inference from the facts alleged; it is speculation. *Twombly*, 550 U.S. at 555 (a complaint that offers no more than "labels and conclusions" or a "formulaic recitation of the elements" does not suffice). Further, that Woodnick knew David had financial resources is an unremarkable feature of any family court representation, it is not a predicate to racketeering liability.

Woodnick's alleged conduct—representing his client in court and participating in a conversation among co-defendants—does not implicate any of the relevant considerations for determining whether a defendant has engaged in "conduct" under § 1962(c). Based on the Complaint, Woodnick did not give or take directions within any enterprise, did not

occupy a position in a chain of command through which the enterprise's affairs were conducted, did not knowingly implement decisions of upper management, and was not indispensable to the achievement of any enterprise goal. *See Walter*, 538 F.3d at 1249.

Plaintiffs contend that at the pleading stage they need not allege any facts specific to Woodnick's personal conduct, so long as they allege he acted "in concert with" the other defendants to corruptly influence the proceedings. (*See* Doc. 25 at 16.) That argument is foreclosed by *Brown*, *Reves*, and *Walter* alike. *Brown* requires factual specificity as to each individual defendant. *Brown*, 2025 WL 2403137, at *4. *Reves* requires that a defendant have some part in directing the enterprise's affairs—acting in concert with others who direct the enterprise is not enough. *Reves*, 507 U.S. at 176, 179 (holding that § 1962(c) liability requires participation in the operation or management of the enterprise itself). And *Walter* confirms that an attorney whose alleged conduct consists of providing legal services and participating in communications does not satisfy either standard, regardless of what the other members of the alleged enterprise may have done. *Walter*, 538 F.3d at 1249 ("Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'").

Because Plaintiffs do not allege that Woodnick directed the affairs of any enterprise, the RICO claim fails at the threshold. The remaining elements will nonetheless be addressed briefly because each provides an independent basis for dismissal.

### b.    Enterprise

An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

Plaintiffs argue that Woodnick and the other named defendants comprised an association-in-fact enterprise because they shared the common purpose of "mak[ing] money by obtaining an order compelling the capture and false imprisonment of an innocent child." (Doc. 25 at 14–15.)  But the enterprise element requires more than a shared outcome, it requires an ongoing organizational structure with sufficient longevity to pursue a common criminal purpose.  *See Boyle*, 556 U.S. at 946.  The Complaint alleges Woodnick's involvement in a single family court case culminating in a single court order.  A single proceeding involving a single family does not establish the ongoing organizational structure the enterprise element requires.[7]

Even if a qualifying enterprise could be established among the other named defendants, the Complaint would still need to allege sufficient facts to support the inference that Woodnick was "aware of the essential nature and scope of the enterprise and intended to participate in it."  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quotation marks omitted).  It does not.  The Complaint's Woodnick-specific allegations describe the ordinary work of a family court attorney: participating in an unspecified conversation and knowing his client's adversary had financial resources.  Plaintiffs' response additionally argues that Woodnick financially benefited from the scheme because David was ordered to pay approximately $75,000 in attorney's fees to Moniz over the course of the proceedings.  (Doc. 25 at 13.)  But receiving court-ordered attorney's fees through the ordinary course of family court litigation is not evidence of awareness of or intent to participate in an enterprise—it is the expected compensation for legal representation.  None of these facts, individually or together, permit the reasonable inference that Woodnick knew his co-defendants were pursuing a fraudulent scheme or that he intended to join one.  Legal representation, standing alone, is not participation in a RICO enterprise.  *See United*

---

[7]   Plaintiffs reference the Nielsen matter in the Complaint's factual background and invoke it in their response to assert a pattern of conduct across multiple cases. (Doc. 1 at ¶¶ 11–14, 52–53; Doc. 25 at 14.)  According to Plaintiffs, the Nielsen matter is a separate Arizona family court proceeding in which several of the same defendants, including Stromfors, employed the same methods used against the Segui family to separate another child from a non-abusive parent for financial gain.  Neither the Complaint nor the response makes any allegation connecting Woodnick to the Nielsen matter.  The Nielsen matter therefore has no bearing on the enterprise analysis as to him.

*States v. Koziol*, 993 F.3d 1160, 1174 (9th Cir. 2021) (recognizing "RICO does not authorize suits by private parties asserting claims against business or litigation adversaries, based on litigation activities").

c.    Pattern of Racketeering Activity

A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Racketeering activity refers to the predicate acts listed in 18 U.S.C. § 1961. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act."). When a plaintiff alleges RICO claims against more than one defendant, the "plaintiff must allege at least two predicate acts by *each* defendant." *In re WellPoint, Inc., Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011). To establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous." *Id.* at 238–42. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.

Plaintiffs allege two predicate acts: (1) wire fraud, based on the allegation that the scheme was discussed by email, and (2) witness tampering, based on the allegation that Shai was coerced to report the reunification program as a success. (Doc. 25 at 12.) Even assuming that these allegations suffice as predicate acts, neither is adequately alleged as to Woodnick.

The Complaint identifies no email sent or received by Woodnick, no communication between Woodnick and Shai, and no specific factual allegation—as opposed to a conclusory group assertion—connecting Woodnick to any alleged predicate act. *See Brown*, 2025 WL 2403137, at *4. As to wire fraud, the Complaint alleges that "Defendants used email, phone calls, text messages, and similar means to communicate to each other a fraudulent scheme." (Doc. 1 at ¶ 140.) But the Complaint identifies no specific email, phone call, or text message sent or received by Woodnick, no receipt of any such communication from him, and no specific content. A group-pleaded allegation that

unnamed defendants communicated by unspecified means does not constitute a well-pleaded predicate act as to any particular defendant. *See Brown*, 2025 WL 2403137, at *4

As to witness tampering, the Complaint contains no allegation that Woodnick ever communicated with Shai, let alone that he participated in coercing Shai's positive account of the program. The allegation that Woodnick participated in a collective decision to withhold Shai's abuse allegations from the family court, (Doc. 1 at ¶¶ 41–45), does not supply the missing predicate act. It is made upon information and belief, identifies no specific communication, meeting, or act by Woodnick himself, and does not allege with any particularity what Woodnick personally withheld, from whom, or when. *See Brown*, 2025 WL 2403137, at *4. Because Plaintiffs have not alleged two predicate acts by Woodnick, the pattern element fails. *WellPoint*, 865 F. Supp. 2d at 1035.

But even if they had, Plaintiffs' RICO theory would face an insurmountable continuity problem for the same reasons that doom the enterprise element. As discussed above, the alleged scheme involves a single family, a single set of proceedings, and a single court order—circumstances that present no threat of continued criminal activity and do not satisfy RICO's continuity requirement. *See H.J., Inc.*, 492 U.S. at 242.[8]

d.    <u>Injury</u>

A civil RICO plaintiff must also establish proximate causation, "some *direct* relation between the injury asserted and the injurious conduct alleged." *Ozeran v. Jacobs*, 798 F. App'x 120, 122 (9th Cir. 2020) (quotation marks omitted). Remote, attenuated, or indirect injuries do not suffice. *See id.*

Plaintiffs have not alleged facts that meet this standard. As discussed above in connection with the enterprise element, Plaintiffs' theory of injury is that David was ordered to pay approximately $75,000 in attorney's fees to Moniz over the course of the proceedings, a portion of which Moniz then paid to Woodnick as his legal fees. (Doc. 25 at 13–14.) The causal chain this theory requires—David pays court-ordered fees to Moniz,

---

[8] Plaintiffs again invoke the Nielsen matter in an attempt to establish continuity across multiple cases. As explained above, however, neither the Complaint nor Plaintiffs' response makes any allegation connecting Woodnick to the Nielsen matter. *See supra* note 7. The Nielsen matter is therefore irrelevant as to him.

- 13 -

who in turn pays her attorney—is precisely the kind of attenuated, derivative injury that RICO's proximate cause requirement screens out. *See Ozeran,* 798 F. App'x at 122.

Because the federal RICO claim under § 1962(c) fails on each required element, the conspiracy claim under § 1962(d) fails as well. *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (reasoning that a § 1962(d) conspiracy claim cannot survive where the underlying § 1962(c) claim fails). Accordingly, Plaintiffs' federal RICO claims against Woodnick will be dismissed.

### 2.    Arizona RICO Claim

Arizona's RICO statute provides a civil cause of action for injury resulting from a pattern of racketeering activity. A.R.S. § 13-2314.04. "Claims under Arizona's RICO statutes are interpreted consistently with the federal RICO statutes." *Avrahami v. Clark*, 2020 WL 2319922, at *3 (D. Ariz. 2020) (citing *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 7 P.3d 158, 162 (Ariz. Ct. App. 2000)). The deficiencies identified above therefore apply with equal force here, and the Arizona RICO claim against Woodnick will be dismissed.

### 3.    Section 1983—Fourth Amendment and Fourteenth Amendment

Shai brings claims against Woodnick under 42 U.S.C. § 1983 for unreasonable seizure under the Fourth Amendment and substantive due process violation under the Fourteenth Amendment. (Doc. 1 at 28–32.) Both claims fail because Woodnick did not act under color of state law.

Section 1983 liability requires that the defendant act under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Because § 1983 claims exclude 'merely private conduct, no matter how discriminatory or wrong,' determining whether a private party acted under color of state law begins with the 'presumption that private conduct does not constitute governmental action.'" *Douglass v. HonorHealth*, 2024 WL 4475093, at *2 (D. Ariz. 2024) (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)); *see also O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023) (holding that state actor status applies to private entities only in "exceptional cases").

There are "at least four different criteria, or tests, used to identify state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Sutton*, 192 F.3d at 835–36). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* (citation omitted). The central question under all four is the same: "whether the conduct of a private actor is fairly attributable to the State." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1109 (9th Cir. 2022) (citing *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012)).

Plaintiffs argue that Woodnick's coordination with court-appointed BIA Stromfors satisfies the joint action test. (Doc. 25 at 17.) "A plaintiff can show joint action either by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *O'Handley*, 62 F.4th at 1159 (quotation marks omitted). Plaintiffs invoke only the latter approach, arguing that Woodnick and Stromfors were "intertwined in a symbiotic relationship" because each depended on the other's participation for the alleged scheme to succeed. (Doc. 25 at 17.) That argument fails.

For purposes of the state action doctrine, "joint action exists when the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Tsao*, 698 F.3d at 1140 (quotation marks omitted). "This test is intentionally demanding and requires a high degree of cooperation between private parties and state officials to rise to the level of state action." *O'Handley*, 62 F.4th at 1159–60 (citing *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). To satisfy this standard, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights; it is not enough that the private party and a state actor were involved in the same proceedings or achieved a mutually beneficial outcome. *See id.* at 1159–61 (holding that information sharing between the government and private entity does not rise to state action even when the private entity and the government share the same goal); *Franklin*, 312 F.3d at 445 ("To be liable as a co-

conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights."). Conclusory allegations unsupported by facts will not suffice to transform private conduct into state action. *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991).

The allegations in the Complaint do not give rise to a plausible inference that Woodnick and any state official were entwined to the requisite degree. Plaintiffs allege that Woodnick and Stromfors were interdependent because each needed the other for the alleged scheme to succeed, *i.e.* Woodnick to control "Moniz (*e.g.* pretending that alienation occurred, the $500 deposit prior to any order, etc.)," and Stromfors to file the Emergency Motion based on that narrative. (Doc. 25 at 17.) But the mere fact that two parties in the same litigation pursued compatible goals and achieved a shared outcome does not establish the high degree of cooperation the willful-participant joint-action approach requires. *See O'Handley*, 62 F.4th at 1159–60. Mutual benefit from adversarial litigation is, again, an unremarkable feature of family court proceedings, not evidence of unconstitutional state action. The Complaint alleges no specific communication between Woodnick and Stromfors aimed at depriving Shai of his constitutional rights, no identified meeting or agreement directed toward that purpose, and no conduct that goes beyond Woodnick's role as Moniz's privately retained counsel. Such conclusory allegations, devoid of specific facts as to when and how any purported joint action occurred, are insufficient to establish state action. *See Price*, 939 F.2d at 708.[9]

Because Plaintiffs have not sufficiently alleged joint action, and because no other recognized basis for state action is alleged, they have failed to state § 1983 claims against Woodnick. Accordingly, the § 1983 claims against him will be dismissed.

---

[9] This conclusion is reinforced by the Related Case, in which another judge on this court dismissed § 1983 claims against Randy Rand—the owner and operator of Building Family Bridges—for failure to establish state action. *Segui*, 2025 WL 1785254, at *7. Rand allegedly had "closed-door conversations" with Stromfors and arranged for Shai's attendance at Building Family Bridges before obtaining permission from the family court. *Id.* Woodnick's alleged connection to any state actor is substantially weaker than Rand's in every respect. If the program operator himself was not a state actor, Moniz's privately retained attorney, whose only alleged conduct is participating in a conversation and representing his client in court, cannot be one either.

- 16 -

### 4.    Leave to Amend

The Ninth Circuit strongly favors leave to amend, and courts should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile."  *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) (quotation marks omitted).  "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiffs will be granted leave to amend their claims against Woodnick.  The deficiencies identified above are primarily ones of factual specificity rather than categorical legal bars.  Plaintiffs face a high hurdle to cure these deficiencies—the legal standards governing RICO liability and § 1983 state action impose demanding requirements that routine legal representation is unlikely to satisfy.  Nonetheless, given that Plaintiffs have not previously had an opportunity to amend, they will be granted leave to do so.

### B.    Defendant Stromfors's Motion to Dismiss

Stromfors moves to dismiss all claims against her on multiple grounds.  She raises three threshold defenses—res judicata, qualified immunity, and statute of limitations—before arguing that Plaintiffs have failed to state a cognizable RICO or § 1983 claim on the merits.

As a threshold matter, Shai does not bring RICO claims in this case.  Rather, Counts 1 and 2 of the Complaint assert RICO claims on behalf of David only.  (Doc. 1 at 21.)  Shai's claims against Stromfors are limited to the § 1983 claims in Counts 6 and 7.  (*Id.* at 28–32.)  Plaintiffs' response incorrectly argues as though Shai brings RICO claims against Stromfors, but he does not.  (*See* Doc. 26 at 11–15.)  The proper analysis, therefore, only involves Shai's § 1983 claims and David's RICO claims against Stromfors.

### 1.    Res Judicata

Rule 8(c) of the Federal Rules of Civil Procedure designates res judicata as an affirmative defense, which ordinarily may not be raised in a motion to dismiss. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Res judicata may nonetheless be asserted at the motion to dismiss stage so long as it does not raise any disputed issues of fact. *Id.*; *Baskin v. Fed. Home Mortg. Corp.*, 2012 WL 6029741, at *1 (D. Ariz. 2012). Stromfors bases her res judicata argument on the Complaint in this action, the operative complaint in the Related Case, and the order dismissing Stromfors on qualified immunity grounds in that case. (*See* Doc. 1; Related Case, Doc. 70; Related Case, Doc. 89; *Segui*, 2025 WL 1785254 (D. Ariz. 2025)).[10] Stromfors's res judicata argument therefore does not present any disputed issues of fact, and consideration of it on a motion to dismiss is appropriate. *See Baskin*, 2012 WL 6029741 at *1.

#### a.    Shai's § 1983 Claim

Stromfors contends that Shai's § 1983 claims are barred by res judicata in light of the Related Case, in which identical § 1983 claims against Stromfors were dismissed on qualified immunity grounds. (Doc. 20 at 7.) She is correct.

Claim preclusion is a doctrine that "bars a party in successive litigation from pursuing claims that were raised or could have been raised in a prior action." *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019) (quotation marks omitted). Claim preclusion applies when a previous proceeding "(1) involved the same claim or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (cleaned up). All three elements are satisfied here.

The second and third elements are easily resolved. The dismissal of Shai's § 1983 claims against Stromfors in the Related Case on qualified immunity grounds constitutes a

---

[10]    The Court takes judicial notice of certain filings in the Related Case, *Segui v. Stromfors*, No. 2:24-cv-01171-DGC (D. Ariz.), because that case is relevant to the res judicata analysis that follows. *See Robert Kubicek Architects*, 2012 WL 3149348, at *1. Specifically, the Court takes judicial notice of the following filings: the operative complaint (Related Case, Doc. 70), and the order dismissing Stromfors on qualified immunity grounds (Related Case, Doc. 89; *Segui*, 2025 WL 1785254 (D. Ariz. 2025)).

final judgment on the merits. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits" (quotation marks omitted)). The fact that Shai has appealed that dismissal to the Ninth Circuit does not alter its preclusive effect. *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("[A] final judgment retains all of its res judicata consequences pending decision of the appeal." (quotation marks omitted)). As to parties, Shai was the plaintiff and Stromfors was the defendant in the Related Case, and both are parties here.

The first element—whether the two suits involve the same claim or cause of action—is assessed by examining four factors: "(1) whether the rights or interests established by the prior judgment would be destroyed or impaired by prosecution of the second action, (2) whether substantially the same evidence is presented in the two actions, (3) whether the two suits involve infringement of the same right, and (4) whether the two suits arise out of the same transactional nucleus of facts." *GP Vincent II v. Estate of Beard*, 68 F.4th 508, 515 (9th Cir. 2023) (citing *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005)). The fourth factor is the most important. *Id.*

The first factor weighs in favor of preclusion. The Related Case established that Stromfors is entitled to qualified immunity for her conduct as court-appointed BIA in connection with these proceedings. *Segui*, 2025 WL 1785254 at *3–4. Permitting Shai to relitigate his § 1983 claims against Stromfors on the same facts would directly undermine that determination and expose Stromfors to precisely the liability the prior judgment foreclosed.

The second factor also weighs in favor of preclusion. The Complaint here draws on the same documents, orders, and events as the operative complaint in the Related Case. (*See* Doc. 1; Related Case, Doc. 70.) Shai would necessarily rely on substantially the same evidentiary record in this action as he presented or could have presented in the Related Case.

The third factor also weighs in favor of preclusion. Both actions assert § 1983

claims against Stromfors arising from the same alleged deprivation of Shai's constitutional rights in connection with the same proceedings. That Shai now invokes the Fourth Amendment in addition to the Fourteenth does not change the analysis. Claim preclusion bars not only those claims actually litigated in a prior proceeding, but also "[n]ewly articulated claims based on the same nucleus of facts . . . if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003). Shai could have raised his Fourth Amendment seizure theory in the Related Case—the same facts were fully available to him then—and he cannot avoid preclusion by holding that theory in reserve for a second action.

The fourth factor most clearly favors preclusion and is the most important factor. *GP Vincent II*, 68 F.4th at 515. The Complaint in this action and the operative complaint in the Related Case rest on the same events: Stromfors's appointment as BIA, the filing of the Emergency Motion, the transportation of Shai to Building Family Bridges, and the no-contact period between Shai and David that followed. (*See* Doc. 1; Related Case, Doc. 70.) There is no meaningful factual distinction between the two pleadings as to Stromfors. (*See id.*) That Shai has added stylistic or organizational variations to the framing of his claims in this action does not alter their essential factual predicate.

Because all four factors favor preclusion and the prior judgment was final and on the merits, Shai's § 1983 claims against Stromfors are barred by res judicata. The Court will dismiss those claims. Because Shai's § 1983 claims are barred by res judicata, leave to amend would be futile and is denied. *See In re Cloudera, Inc.*, 121 F.4th at 1189–90. No amendment to the pleadings can alter the identity of the parties, the finality of the prior judgment, or the identity of the claims.

b.    David's Claims

Stromfors does not dispute that David was not a party to the Related Case, (*see* Doc. 20 at 12), and thus acknowledges that she must establish privity to invoke res judicata as to David's RICO claims against her. *Enyart v. Cnty. of San Bernadino*, 2025 WL 1090954, at *3 (C.D. Cal. 2025). To do so, she relies on the doctrine of "virtual representation."

(*See* Doc. 20 at 12; Doc. 28 at 7.)  That argument fails.

"The application of claim and issue preclusion to nonparties . . . runs up against the deep-rooted historic tradition that everyone should have his own day in court."  *Taylor v. Sturgell,* 553 U.S. 880, 892–93 (2008) (quotation marks omitted).  Reflecting that tradition, the general rule is that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."  *Id.* at 893 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).  The Supreme Court recognizes six exceptions to the rule against nonparty preclusion: (1) where there is an agreement between a party and the nonparty; (2) where there is a "preexisting substantive legal relationship" between the party and the nonparty; (3) where the nonparty was adequately represented by a party with the same interest; (4) where the nonparty "assumed control over the litigation"; (5) where the nonparty seeks to relitigate as a proxy or representative for the party to the earlier proceeding; and (6) where a "special statutory scheme" expressly forecloses subsequent litigation by nonparties.  *Id.* at 892–95 (cleaned up).

Stromfors's reliance on "virtual representation" is misplaced because the Supreme Court squarely disapproved of "preclusion by 'virtual representation'" in *Taylor*.  *Id.* at 885; *see also United States v. Bhatia*, 545 F.3d 757, 758 (9th Cir. 2008) ("[Appellant's] argument is a variation on the 'virtual representation' theory recently rejected by the Supreme Court in *Taylor*[.]").  Stromfors did not cite *Taylor* in her Motion and Reply. (Docs. 20, 28.)  Despite this oversight, her argument will be construed as an assertion that the familial relationship between David and Shai establish privity through "adequate representation," the first category of the privity exceptions outlined above.

In *Taylor*, the Supreme Court confirmed that "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit."  553 U.S. at 894 (cleaned up). However, a party's representation of a nonparty is adequate for preclusion purposes only if, at a minimum: "(1) the interests of the nonparty and her representative are aligned; and

(2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (cleaned up).

Neither condition exists here. David and Shai do not have aligned interests for purposes of privity. Shai's claims in the Related Case were § 1983 constitutional claims seeking redress for the deprivation of his own liberty interests. (*See* Related Case, Doc. 70.) David's claims here are RICO claims seeking redress for financial injury and the loss of his parental rights. (*See generally* Doc. 1.) David and Shai's theories of liability, the evidence relevant to each, and the relief sought are distinct. Nor is there any basis to conclude that Shai understood himself to be litigating in a representative capacity on David's behalf, or that the court in the Related Case took steps to protect David's interests. The fact that they are father and son, share the same counsel, and hold parallel grievances does not satisfy Taylor's requirements. *Cf. Enyart*, 2025 WL 1090954, at *3–4 (rejecting privity where parties' interests, though related, were premised on different theories of liability). Accordingly, res judicata does not bar David's claims.

### 2.    Statute of Limitations—David's RICO Claims

Stromfors also argues that David's RICO claims are time-barred because David had actual knowledge of his injury no later than January 6, 2021—the date he was present in court, sworn in, and acknowledged his understanding that the boys would be transported to Building Family Bridges—and that his May 2025 filing therefore falls outside the four-year limitations period for federal civil RICO claims and the three-year period for Arizona's state analog.[11] (Doc. 20 at 13–14, 17.) Plaintiffs respond that the clock did not start until Shai was permitted to communicate with David, because only then could David have learned the full extent of what occurred during the Building Family Bridges program and the ensuing aftercare period. (Doc. 26 at 20–21.)

---

[11]    Stromfors raises the statute of limitations as a threshold defense; Woodnick did not. The statute of limitations is an affirmative defense that must be affirmatively stated in a responsive pleading and may be forfeited if not raised. *See* Fed. R. Civ. P. 8(c)(1). The Court therefore addresses the limitations question only as to Stromfors. The dismissal of David's RICO claims against Woodnick rests independently on the failure to state a claim under Rule 12(b)(6), which provides a sufficient and complete basis for dismissal regardless of timeliness.

- 22 -

A four-year statute of limitations applies to civil RICO actions.[12] *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). This "limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001) (quoting *Grimmett*, 75 F.3d at 510). The clock starts upon discovery of the injury itself, not upon discovery of the pattern of racketeering activity or the full scope of the alleged scheme. *See Rotella v. Wood*, 528 U.S. 549, 553–54 (2000). A plaintiff cannot delay accrual by arguing that he did not yet appreciate all dimensions of the conduct that caused his injury. *See id.* Thus, to state a timely claim, David must have discovered his injury after May 29, 2021—four years before he filed this action.

Plaintiffs concede that the injury discovery rule applies, but dispute when David's injury occurred. They argue that David's injury occurred when he "learned of the extent to which" Shai was "abused and tortured"—which they contend could not have happened "until Shai was finally allowed to communicate with his own father." (Doc. 26 at 20–21.) By their account, Shai was "captured and imprisoned" away from David "for approximately 420 days" beginning in January 2021. (*Id.* at 20.) To the extent Plaintiffs contend that this is the period during which David could not have learned of Shai's experience, that places the earliest possible accrual date under their own theory at approximately late February 2022. Plaintiffs assert that because this action was filed in May 2025, less than four years later, David's claims are timely. (*Id.* at 20–21.)

Although David may not have appreciated the full extent of the alleged scheme until Shai communicated with him, the law is clear that discovery of the injury commences the limitations period, not discovery of its full scope. *See Rotella*, 528 U.S. at 553–54. David's injury is the deprivation of his custody and his relationship with his sons; it is not

---

[12] As with Stromfors's res judicata arguments, the statute of limitations is an affirmative defense under Rule 8(c), but it may be raised on a motion to dismiss where, as here, the defense is apparent on the face of the complaint and raises no disputed issues of fact. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss.").

learning "the full extent of" Shai's abuse, or the alleged scheme to keep the boys at Building Family Bridges. At the very latest, David knew of the injury to his parental rights on January 6, 2021. By that date, the Temporary Order removing Shai and his brother from David's custody had been entered, the boys were being transported to Building Family Bridges, and the no-contact period between David and his sons had begun. (*See* Doc. 1 at ¶¶ 76, 77, 82–90, 98.) Thus, he had to have filed his claim on January 6, 2025. David filed this action on May 29, 2025, four months after the limitations period expired. (*See id.*)

Plaintiffs' argument that David could not have discovered the full extent of the injury until Shai was permitted to communicate with him conflates discovery of David's own injury with discovery of his son's experience at Building Family Bridges. Those are distinct inquiries, and only the former is relevant to accrual of David's claims. His federal RICO claims under 18 U.S.C. § 1962(c) and (d) are therefore time-barred and will be dismissed.[13] Because amendment would be futile—no amendment can change when David's injury occurred, when he had knowledge of it, or when this action was filed— leave to amend is denied. *See In re Cloudera*, 121 F.4th at 1189–90.

David's Arizona RICO claim under A.R.S. § 13-2314.04 fares no better.[14] Arizona's analog carries a three-year limitations period—not a four-year limitations period—running from the date the violation was discovered or reasonably should have been discovered. A.R.S. § 13-2314.04(F); *see also Zwicky v. Diamond Resorts Inc.*, 2021 WL 2685585, at *4 (D. Ariz. 2021). That period expired no later than January 2024, well over a year before this action was filed. Accordingly, David's Arizona RICO claim is time-barred and will be dismissed. Because this claim is time-barred as a matter of law, leave

---

[13]    Plaintiffs also argue that the statute of limitations has not run as to Shai because he did not reach the age of majority until July 14, 2023. (Doc. 26 at 21.) That argument is inapplicable. Shai does not bring RICO claims, and his § 1983 claims are disposed of on res judicata grounds independent of any limitations analysis.

[14]    Plaintiffs incorrectly assert that Arizona's civil RICO statute carries a four-year limitations period, citing *Barker v. Brown & Brown*, 210 Ariz. 321, 110 P.3d 1011 (Ct. App. 2005). That citation is addressed separately. *See infra* Section IV(C). As relevant here, the correct limitations period under A.R.S. § 13-2314.04(F) is three years, not four— meaning David's Arizona RICO claim is time-barred by an even wider margin than his federal claim.

to amend would be futile and is denied.  *See In re Cloudera*, 121 F.4th at 1189–90.

### C.    Sanctions and Vexatious Litigant Request

Stromfors requests that the Court sanction Plaintiffs and their counsel under Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1927 and declare Plaintiffs vexatious litigants subject to a pre-filing order barring further litigation against Stromfors in connection with her role as BIA.  (Doc. 20 at 18–19.)  The Court declines these requests.

Rule 11 sanctions must be sought by a motion separate from any other motion and are subject to the rule's safe harbor provision, which requires the moving party to serve the proposed sanctions motion on opposing counsel twenty-one days before filing in order to allow an opportunity for voluntary correction.  Fed. R. Civ. P. 11(c)(2); *see also Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).  Stromfors did not file a separate Rule 11 motion and did not comply with the safe harbor procedure; the request embedded within her motion to dismiss is therefore procedurally deficient on its face.  *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005); *Barber*, 146 F.3d at 710 (holding that "[a]n award of [Rule 11] sanctions cannot be upheld" where party seeking sanctions did not provide twenty-one day notice period).

The request under 28 U.S.C. § 1927 will also be denied.  Under § 1927, any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "Courts wishing to impose sanctions under § 1927 must make a finding that the attorney to be sanctioned acted with 'subjective bad faith.'"  *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (quotation marks omitted).

Although Plaintiffs did not respond to this request, (*see generally* Doc. 26), the absence of a response does not relieve Stromfors of the burden of establishing the predicate

for sanctions.  On the record before the Court, a finding of subjective bad faith cannot be made.  The claims Plaintiffs have brought, while ultimately unsuccessful, are not so lacking in legal or factual foundation as to permit an inference that counsel pursued them for purposes of harassment or delay rather than to vindicate their clients' asserted rights.  The fact that this is Plaintiffs' second federal action arising from the same family court proceedings, and that some of the claims raised here were previously adjudicated against them, is relevant context, but repetitive litigation, standing alone, does not establish the subjective bad faith that § 1927 requires.  That Plaintiffs have pursued claims that ultimately fail, or that they have relitigated issues previously decided against them, does not, without more, establish the kind of knowing or reckless misconduct § 1927 requires.

The Court raises a separate matter sua sponte.  In opposing the statute of limitations argument, Plaintiffs cite *Barker v. Brown & Brown*, 210 Ariz. 321, 110 P.3d 1011 (Ct. App. 2005) for the proposition that Arizona's civil RICO statute carries a four-year limitations period.  (Doc. 26 at 20.)  This case does not exist.  Additionally, the proposition for which it is cited is also incorrect: the four-year period established by *Agency Holding Corp.*, 483 U.S. 143 (1987), applies to federal civil RICO claims only.  Arizona's private RICO action is governed by the three-year period set forth in A.R.S. § 13-2314.04(F).

Citation to nonexistent authority is a serious matter that implicates counsel's obligations under Federal Rule of Civil Procedure 11(b)(2) to certify that all legal citations are warranted by existing law and are the product of reasonable inquiry.  The fabrication of legal citations, whether through artificial intelligence or otherwise, undermines the integrity of the judicial process.  Pursuant to Federal Rule of Civil Procedure 11(c)(3), which authorizes the Court on its own initiative to "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)," the Court will order Plaintiffs' counsel to show cause in writing why sanctions should not be imposed for citation to a nonexistent case.

For the reasons stated above,

///

**IT IS ORDERED** that Defendant Gregg Woodnick's Motion to Dismiss (Doc. 18) is **granted**.  Plaintiffs' claims against Woodnick are **dismissed with leave to amend**.

**IT IS FURTHER ORDERED** that Defendant Stephanie Stromfors's Motion to Dismiss (Doc. 20) is **granted in part** and **denied in part**.  All of Plaintiffs' claims against Stromfors are **dismissed without leave to amend**.  Stromfors's request for sanctions and a vexatious litigant order under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 is **denied without prejudice**.  Defendant Stromfors is hereby **dismissed from this action**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file an Amended Complaint consistent with this Order within thirty (30) days of the date of this Order.

**IT IS FURTHER ORDERED** that if Plaintiffs do not file an Amended Complaint within thirty (30) days of the date of this Order, the Clerk of Court shall dismiss this action without further Order from the Court.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel shall show cause in writing within twenty (20) days of the date of this Order for why sanctions should not be imposed under Federal Rule of Civil Procedure 11.

Dated this 24th day of March, 2026.

_____
Honorable Sharad H. Desai
United States District Judge